### UNITED STATES of America

v.

### Ronald PASQUALINO.

### Crim. No. 91–10028–H.

United States District Court,
D. Massachusetts.

July 24, 1991.

---

**14**

Michael C. Bolden, Asst. U.S. Atty., Boston, Mass., for U.S.

Gerald T. Fitzgerald, New Bedford, Mass., for defendant Ronald Pasqualino.

## MEMORANDUM AND ORDER

HARRINGTON, District Judge.

This case comes before this Court on Defendant Ronald Pasqualino's Motion to Suppress all evidence in support of the indictment against him as the fruit of an illegal search. After an evidentiary hearing on the motion, the Court finds the following facts:

1. On the evening of November 14, 1990, the defendant Ronald Pasqualino was a registered guest of the Susse Chalet Hotel at 800 Morrissey Boulevard in Dorchester.

2. On this date, Officers William Quigley and Ed Sigliano were duly appointed special police officers for the City of Boston, employed by the Bay Colony Boston, Inc. Division of Special Police. Officers Quigley and Sigliano had full police powers on all property owned and controlled by the Bay Colony Corporation, including the property at 800 Morrissey Boulevard.

3. At approximately 11:40 p.m., a white male, identified as Christopher Burns, approached Officers Quigley and Sigliano in the parking lot of the Susse Chalet Hotel and alleged that he had been sexually assaulted by an individual in the hotel. Mr. Burns pointed out that individual to the officers as Mr. Burns saw him crossing the parking lot toward an automobile. The individual was later identified as the Defendant Ronald Pasqualino.

4. Officer Quigley approached Mr. Pasqualino, identified himself as a special police officer, and informed Mr. Pasqualino of the allegations made by Mr. Burns. Mr. Pasqualino denied any association with Mr. Burns and proceeded to get into his automobile.

5. Officer Quigley requested that Mr. Pasqualino step out of the car so that he might speak with him about the allegations. At that point, the defendant began screaming and yelling and using profane language. Officer Quigley directed Mr. Pasqualino to calm down and again requested that he step out of the car. When Mr. Pasqualino remained behind the wheel of the automobile and continued to yell and to scream, Officer Quigley warned him that he would place him under arrest.

6. The defendant still refused to comply with the officer's requests. Officer Quigley then arrested the defendant for being an idle and disorderly person. A struggle followed. The defendant was ultimately handcuffed and transported from the scene.

7. Following the defendant's arrest, and pursuant to the policy of the Bay Colony Division of Special Police, Officer Quigley had the defendant's vehicle towed from the hotel parking lot.

8. Prior to the towing of the vehicle, also pursuant to Bay Colony policy, Officer Quigley conducted an inventory search of the defendant's vehicle to ascertain what items of value were contained in the ve-

hicle. Officer Quigley prepared a motor vehicle inventory report of the items found.

9. In the course of the inventory search, Officer Quigley opened the trunk of the automobile and saw a carton containing seventy-two cans of chemical mace. Below the carton, Officer Quigley found a black plastic case which he recognized to be a gun case. Upon opening the case, he discovered a 9 mm Taurus handgun, fully loaded, and two cartridges of ammunition. Further inspection of the trunk compartment revealed a .22 caliber rifle and additional ammunition. Officer Quigley seized the dangerous instrumentalities and transported them to the Boston Police Department.

Defendant here contends that all evidence must be suppressed as the fruit of an illegal search. This Court need not make a judgment as to the legality of the inventory search itself, however, because the arrest that precipitated the search and served as the sole justification for the search in this case, was unlawful. In particular, though the defendant was arrested for being an "idle and disorderly person" under Mass.Gen.L. ch. 272, § 53, there is insufficient evidence to support the claim that the defendant's *conduct* was, in fact, *disorderly*. *See Commonwealth v. Feigenbaum*, 404 Mass. 471, 474, 536 N.E.2d 325 (1989) (noting that "the gravamen of the offense is necessarily contained in the word 'disorderly' ") (citation omitted).

■ An arrest under the "idle and disorderly person" statute may be valid where the defendant's conduct involves fighting or threatening or tumultuous behavior, or where it involves "riotous commotion and excessively unreasonable noise so as to constitute a public nuisance." *Common-*

*wealth v. A Juvenile*, 368 Mass. 580, 597, 334 N.E.2d 617 (1975). However, the Massachusetts Supreme Judicial Court clearly has held that an individual may not constitutionally be arrested for being an "idle and disorderly person" solely on the basis of offensive and abusive language. *Id.* at 583, 592, 334 N.E.2d 617; *see also Commonwealth v. Richards*, 369 Mass. 443, 446 n. 2, 340 N.E.2d 892 (1976). The statute may only reach conduct "which involves no lawful exercise of a First Amendment right." *Commonwealth v. A Juvenile*, 368 Mass. at 599, 334 N.E.2d 617.

■ In this case, Officer Quigley testified that the Defendant Pasqualino was arrested for yelling, screaming, swearing and generally causing a disturbance.[1] The officer stated that the defendant was "out of control," but he did not suggest that the defendant made any threatening gestures. Officer Quigley also testified that there was no physical contact between him and the defendant until *after* the officer told the defendant that he was under arrest. Until the moment of the arrest, the defendant remained seated behind the wheel of his automobile. Though Mr. Pasqualino's yelling was undoubtedly loud enough to attract the attention of other guests in the hotel, it does not appear to this Court to have risen to the level of "riotous commotion" or "public nuisance." Apparently, then, the sole basis for the arrest was the defendant's loud and offensive *speech*,[2] and, as such, the arrest was unlawful under Massachusetts law.

■ As the Government itself admits, where the arrest was unlawful, any evidence obtained as a result of the illegitimate arrest must be suppressed as fruit of the poisonous tree. *See Wong Sun v.*

---

1. The police report specifically states that the defendant "continued to yell and scream to the point where he was placed under arrest for being a disorderly person." (See Defendant's Exhibit 1).

In addition, in the government's Memorandum in Opposition to Defendant's Motion to Suppress, the government itself indicates that the basis of the arrest was the defendant's failure to "stop yelling and creating a disturbance." (Memorandum at p. 2).

2. Though the government contends that there was "an abundance of evidence to show that the defendant's *conduct* was unruly and tumultuous," (*see* Supplemental Memorandum in Opposition to Defendant's Motion to Suppress at p. 4), the government does not point to one specific fact in Officer Quigley's testimony to support that contention. The government rests its case solely on the conclusion that the defendant was "loud" and, consequently, that he "created a disturbance." *Id.*

*United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).  Defendant's Motion to Suppress, therefore, is granted.